**Duren Adair BISHOP and Wife Claudia Ann Bishop, Appellants,**

v.

**John HARRIS and Wife, Barbara Harris, Appellees.**

No. 12–83–0069–CV.

Court of Appeals of Texas, Tyler.

April 19, 1984.

Rehearing Denied May 17, 1984.

James P. Kelley, Ireland, Carroll & Kelley, Tyler, for appellants.

Ken Ross, Longview, for appellees.

COLLEY, Justice.

Defendants/appellants appeal from an order granting a temporary injunction, partly prohibitive, and partly mandatory, in favor of plaintiffs/appellees.

The trial court, pursuant to the provisions of Rule 385, Tex.R.Civ.P., suspended the order pending this appeal.

Bishop assails the order on three points of error, claiming the trial court abused its discretion in issuing the order because (1) Harris failed to establish a probable right of recovery; (2) Harris had an adequate remedy at law; and (3) that as to the mandatory portion of the order, the evidence did not establish the existence of an "extreme hardship." We reverse and render judgment denying injunctive relief.

A summary of the undisputed facts follows.

Bishop and Harris acquired adjoining parcels of land located in a commercial subdivision on Loop 281 in Longview. Before the construction of any improvements on either parcel, the surface waters created by rainfall ran off from the west to the east across the properties. The lower estate owned by Bishop is east of the land of Harris who owns the "higher estate."

After Harris constructed his buildings and parking lots, the surface waters continued to flow to the east across Bishop's property. The undisputed evidence shows however, that the construction of such improvements concentrated the surface waters and accelerated the flow thereof to Bishop's land. The evidence clearly shows that when Bishop laid the concrete foundation for his building to the east, the waters received from the higher estate washed the earth out around a portion thereof. Thereafter, Bishop caused a concrete block retaining wall to be constructed on a portion of the parties' common boundary line. Such wall as shown by the evidence had a "daming effect" and caused surface waters to back up on the front parking lot of the Harris property. Following heavy rains the water was occasionally "ankle deep" and "knee deep" in places.

Harris contends that the construction of his buildings and parking lots did not change the "natural flow" of the surface waters from west to east from his lands to those of Bishop, and therefore, Bishop violated the provisions of Article 11.086(a), V.T.C.A., Water Code (formerly Article 5.086)[1] in diverting the natural flow of the surface waters by constructing the retaining wall.

■ No findings of fact and conclusions of law were requested or filed; however, in the order granting the temporary injunction the court found, "... that the defend-

ants have diverted the surface water in question onto the property of plaintiffs as set out in plaintiffs' original petition; ...."[2] In reviewing the order under attack we must affirm the trial court's judgment upon this theory or any other theory sustained by the evidence adduced at trial.

The resolution of the issues presented in this appeal turns on whether or not the evidence supports the trial court's findings, both express as recited in the order itself and its implied findings that Bishop in constructing and maintaining the retaining wall unlawfully impounded or diverted surface waters naturally flowing from Harris' upper estate to Bishop's lower estate in violation of Article 11.086.

We find the evidence does not support the court's judgment. Bishop's point one is sustained. The trial court abused its discretion in ordering the injunction.

Our decision is bottomed on the Texas Supreme Court's holdings in *Miller v. Letzerich*, 121 Tex. 248, 49 S.W.2d 404 (1932), and *Bunch v. Thomas*, 121 Tex. 225, 49 S.W.2d 421 (1932). The opinions in these cases were delivered on the same day. In *Miller v. Letzerich, supra,* the owner of the upper estate was engaged in repairing a ditch and levee on his land so as to divert surface waters to the land of a lower adjoining estate; the trial court enjoined the defendant (owner of the upper estate) from so doing. The Court of Civil Appeals affirmed the judgment. The Supreme Court in reviewing the decisions first discussed the development of the water law in this state under four sovereignties, Spain, Mexico, Republic of Texas and State of Texas, under which sovereignties various land grants had been made prior to the adoption of the common law rule of decision by the Republic of Texas in 1840 (see this opinion for a review of such history and authorities cited therein). In brief, the Supreme Court stated that the rule of

---

**1.** All references are to the Texas Water Code unless otherwise indicated.

**2.** Plaintiffs' first amended original petition in part alleges, "Said Defendants have contracted

and caused construction of a wall on Defendants' property.... The construction of this wall has diverted the natural flow of surface waters onto Plaintiffs' property."

decision both at civil and common law were identical respecting surface waters. The court then stated the rule to be:

"The ... rule of the civil law is that lands lower than the coterminous estate owe a service to receive the burden of surface waters which may flow from the higher estate onto the lower, so long as the surface waters from the dominant estate reaches the borders of the servient one *untouched and undirected by the hands of man.*" (Emphasis in original.)

The court then goes on to explain that such rule obtains because the dominant right is appurtenant to and inherently a part of the grant of lands by the sovereignty, independent of any contractual or prescriptive rights, and is thus constitutionally protected. The Supreme Court affirmed the judgments below because the past and prospective conduct of the defendant would bring about greater concentration of surface waters and allow it to flow "... in increased quantities, in a different state, and in a manner well calculated to inflict injury." This, the court said, was prohibited by Article 7589a, Tex.Rev.Civ.Stat.Ann., the forerunner of Article 11.086, as well as by both the civil and the common law rules of decision.

*Bunch v. Thomas, supra,* presents a fact situation where again the decision favors the lower estate owner who instead of seeking injunctive relief resorted to self-help and constructed a levee or embankment to repel surface waters from a higher estate. The upper estate owner sought and obtained a mandatory injunction in the trial court requiring the destruction of the levee or embankment by the lower estate owner. The material facts show that the upper estate owner (plaintiff in the trial court) cut ditches on his land which concentrated the surface waters so that it reached the lower estate in a state or quantity of flow different from the diffused state occurring naturally before the construction of the ditches. The Supreme Court observes that upon these facts that "... it is plain that the surface water, to prevent the flow of which [the lower estate owner's] levee is maintained, are not waters which reach the line of [the lower estate owner's] land in their natural diffused state untouched by the hands of man. On the contrary, the undisputed evidence shows that they reached the line ... at one point in a concentrated form, necessarily in a larger volume and in a manner entirely different from the condition which they would have been had ditches not been cut on the [plaintiff's] land...."

Following a rather lengthy discussion of the law, the Supreme Court affirmed the action of the Court of Civil Appeals (opinion reported *Thomas v. Bunch,* 41 S.W.2d 359 [Tex.Civ.App.1931]) reversing and remanding the cause, holding that the defendant was not prohibited by the provisions of former Article 7589a, now Article 11.086 from erecting and maintaining the levee or embankment so long as reasonably necessary to protect her land against flooding and accumulated waters caused by the acts and construction of another, which acts and construction causes the surface waters from the upper estate to reach her land in an "unnatural form."

■ Applying the rules in *Miller v. Letzerich, supra,*[3] and *Bunch v. Thomas, supra,*[4] to our case, we conclude that the undisputed evidence shows that the runoff of the surface waters from Harris' land to Bishop's land was concentrated and accelerated by the construction of the parking lots and buildings by Harris on his property, and that by reason thereof, Bishop's action in building and maintaining the retaining wall does not constitute a violation of Article 11.086 of the Texas Water Code (formerly Article 5.086).

The judgment of the trial court is reversed and judgment is here rendered denying the injunctive relief.

---

3. See *Kraft v. Langford,* 565 S.W.2d 223, 228 (Tex.1978).

4. Cited with approval in *Robertson v. Robertson,* 159 Tex. 567, 574, 323 S.W.2d 938, 943 (1959).